**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| _____ ) | |
| HOWARD M. KAHALAS, PC,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | Civil Action No. |
| v.    ) | 15-13255-NMG |
| ) | |
| MARC J. SCHILLER,    ) | |
| ) | |
| Defendant.    ) | |
| _____ ) | |

## MEMORANDUM & ORDER

GORTON, J.

This dispute is internecine.  It arises from allegations that one attorney intentionally and maliciously defamed another law firm so that its client would retain a third attorney to represent her in a personal injury action.

Pending before the Court is defendant attorney's motion to dismiss the complaint or, in the alternative, to require a more definite statement.  For the reasons that follow, the motion to dismiss will be allowed, in part, and denied, in part, and the motion to require a more definite statement will be denied.

I.   **Background**

The Court accepts as true the following allegations by plaintiff Howard M. Kahalas, PC ("plaintiff" or "Kahalas, PC") for the purpose of resolving the motion to dismiss.

-1-

Plaintiff is a law firm specializing in personal injury litigation and a Massachusetts professional corporation with its principal office in Boston, Massachusetts.  Lisa Aronson ("Aronson"), Steven Bergel ("Bergel") and Howard Kahalas ("Kahalas") are attorneys who work at the firm.

Non-party Kathleen Tuscano ("Kathleen") is an individual who sustained serious injuries in a motor vehicle accident in March, 2015 that left her in a coma and unable to communicate. Plaintiff had purportedly represented Kathleen in an unrelated claim for personal injuries caused by an earlier motor vehicle accident in July, 2006.

Members of Kathleen's family include her parents, John and Patricia Tuscano ("John and Patricia"), her brother, Jake Tuscano ("Jake") and her long-term boyfriend, Justin Behling ("Behling").  Prior to the March, 2015 accident, Behling and Kathleen lived together in a house owned by Behling's uncle. The complaint does not name any of Kathleen's family as parties to the instant action.

Defendant Marc J. Schiller ("defendant" or "Schiller") is Behling's uncle.  He is also an attorney who resides in New Hampshire.

Plaintiff claims that, shortly after the March, 2015 accident, associates of the firm communicated with members of Kathleen's family and agreed to represent Kathleen on a

contingency fee basis in her new claim for personal injuries. Attorneys Aronson and Bergel attended a meeting with John, Patricia, Jake and Behling at the hospital where Kathleen received treatment.  Plaintiff alleges that Attorney Bergel formed "a close and intimate personal relationship" with Kathleen's family and frequently visited and communicated with them to discuss Kathleen's condition and the family's needs.

Attorney Bergel met with the Tuscano family in early May, 2015 when he heard Kathleen speak for the first time.  One day later, Attorneys Bergel and Kahalas met with John, Jake and the defendant at plaintiff's law office where Bergel and Kahalas answered defendant's questions concerning Kathleen's case. Plaintiff suggests that the meeting lasted less than an hour and that John, Jake and defendant spoke privately after the meeting for about an hour.

Plaintiff complains that "communications between [it] and the Tuscano family noticeably chilled" after the meeting and that John later informed Attorney Bergel that defendant "was not impressed with the meeting".  Plaintiff avers that it later received an e-mail from Jake that questioned its experience, qualifications and litigation strategy.  Shortly thereafter plaintiff was notified that the Tuscano family had retained another attorney to represent Kathleen on her personal injury claim.

In August, 2015, plaintiff filed a complaint in Massachusetts Superior Court asserting that defendant "slandered [it] to the Tuscano family" in order to induce the family to retain another attorney to replace it as counsel on the personal injury claim. It alleges that defendant's actions constituted 1) intentional interference with its contractual relationship with Kathleen, 2) intentional interference with its advantageous business relationship with her, 3) defamation and 4) unfair business practices under M.G.L. c. 93A, §§ 2 and 11 ("Chapter 93A"). Defendant duly removed the action to this Court on diversity grounds and filed the pending motion to dismiss the complaint or, in the alternative, to require a more definite statement.

## II. <u>Motion to dismiss</u>

### A. <u>Legal standard</u>

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 570 (2007). In considering the merits of a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. <u>Santiago</u> v. <u>Puerto Rico</u>, 655 F.3d 61, 72 (1st Cir. 2011). Threadbare recitals of the legal elements, supported by mere conclusory statements, do not

-4-

suffice to state a cause of action. <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 678 (2009).  A complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. <u>Id.</u> at 679.

### B.   Application

#### 1.   Intentional interference with contractual relations

To assert a claim of intentional interference with contractual relations, plaintiff must allege that 1) it had a contract with a third party, 2) defendant knowingly induced that third party to violate the contract, 3) the interference was intentional and improper in motive or means and 4) plaintiff was harmed by defendant's actions. <u>G.S. Enters., Inc.</u> v. <u>Falmouth Marine, Inc.</u>, 410 Mass. 262, 272 (1991).

Plaintiff alleges in Count 1 that defendant intentionally interfered with its contractual relations because 1) plaintiff had an agreement with Kathleen whereby it would represent her in exchange for "millions of dollars in legal fees" if her claim was successful, 2) defendant knew about the agreement and intentionally slandered plaintiff to Kathleen so that she would terminate the agreement and retain another attorney, 3) defendant "received financial compensation for referring the Tuscano case to another attorney" which rendered his interference intentional, malicious and improper in motive and

means and 4) defendant caused plaintiff to lose an opportunity to earn "millions" in legal fees.

Defendant moves to dismiss for failure to state a claim because the complaint 1) "accuses" him of slander without identifying the statement at issue or explaining how such a statement was defamatory, 2) "baldly" asserts that he received financial compensation without describing the nature, amount or impropriety of that compensation and thus 3) does not allege malicious conduct or improper motive or means.

Defendant further contends that, rather than alleging a valid contract between plaintiff and Kathleen, the complaint asserts that a contract existed between plaintiff and other members of Kathleen's family without also alleging that a) those members were authorized by guardianship, power of attorney or otherwise to retain an attorney on Kathleen's behalf or b) Kathleen ratified the agreement after she regained consciousness.  Plaintiff responds that "the question of contract formation or contract validity is a question of fact" which cannot form the basis for the dismissal of a complaint, citing Crellin Techs., Inc. v. Equipmentlease Corp., 18 F.3d 1, 7 (1st Cir. 1994).

Plaintiff's reliance on the Crellin decision is misplaced. In Crellin, the First Circuit Court of Appeals held that

> so long as the evidence does not point unerringly in a
> single direction but is capable of supporting
> conflicting inferences, the question of whether a
> contract has been formed between two parties is a
> question of fact to be determined by the factfinder.

Id. Here, however, plaintiff's allegations are not "capable of supporting conflicting inferences" because it wholly fails 1) to assert that members of the Tuscano family were authorized to contract with it on Kathleen's behalf or that Kathleen later ratified the contract or 2) to present factual allegations in support of its claim that it had a contract with Kathleen. Plaintiff's conclusory statements that it had a contract with Kathleen solely by virtue of its purported contract with members of her family do not satisfy the pleading standards set forth in Twombly and Iqbal.

Accordingly, the complaint does not properly allege the first element of a claim of intentional interference with contractual relations and defendant's motion to dismiss Count 1 will be allowed.

### 2. Intentional interference with advantageous business relationship

A claim of intentional interference with an advantageous business relationship must assert that 1) plaintiff had a business relationship or anticipated a contract of economic benefit, 2) defendant knew of the relationship, 3) defendant interfered with the relationship through an improper motive or

means and 4) plaintiff suffered a loss of advantage as a direct result of defendant's conduct. Am. Private Line Servs., Inc. v. E. Microwave, Inc., 980 F.2d 33, 36 (1st Cir. 1992).

To satisfy the third element, plaintiff must allege "wrongfulness beyond the interference itself." James L. Miniter Ins. Agency, Inc. v. Ohio Indem. Co., 112 F.3d 1240, 1250 (1st Cir. 1997) (citing United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 816 (1990)).  Such improper conduct may exist if a party "used threats, misrepresented any facts [or] defamed anyone" in the course of the interference. Geltman, 406 Mass. at 817.  Plaintiff need not, however, establish that the improper interference was also malicious, unless the claim is raised by an employee suing an employer in an employment dispute which is not present here. See James L. Miniter Ins. Agency, 112 F.2d at 1250 ("[T]he third element requires merely an improper interference, and not a malicious one."); Blackstone v. Cashman, 448 Mass. 255, 262 (2007)("We have not rejected the actual malice standard for corporate officials acting with regard to contractual or prospective contractual relations between the corporation and its employees.").

In this case, plaintiff asserts in Count 2 that defendant intentionally interfered with its advantageous business relationship with Kathleen because 1) plaintiff had a business relationship with her and her family, 2) defendant knew about

-8-

the relationship, 3) he knowingly and intentionally induced the termination of the relationship through the improper means of slander and with the improper motive of receiving referral fees and 4) as a result, plaintiff lost an opportunity to earn lucrative legal fees.

Defendant responds by 1) reiterating that the complaint fails to allege malicious conduct or improper means or motive and 2) denying that he caused Kathleen to retain another attorney.

The Court finds that, after accepting all factual allegations as true and drawing all reasonable inferences in its favor, plaintiff sufficiently alleges that defendant interfered with its business relationship and caused it to lose a client. The Court also finds, as discussed below, that it is reasonable to infer that defendant did so through the improper means of defamation.

Accordingly, the complaint adequately sets forth a claim of intentional interference with advantageous business relations. Defendant's motion to dismiss Count 2 will be denied.

### 3.   Defamation

For its defamation claim to survive dismissal, plaintiff must allege that 1) defendant made a statement concerning plaintiff to a third party, 2) the statement could damage its reputation in the community, 3) defendant was at least negligent

in making the statement and 4) the statement either caused it economic loss or is actionable without proof of economic loss. Ravnikar v. Bogojavlensky, 438 Mass. 627, 629-30 (2003).  Only statements that constitute libel, charge plaintiff with a crime, allege certain diseases or may prejudice plaintiff's profession or business are actionable without economic loss. Id. at 630.

In Count 3, plaintiff claims that 1) defendant knowingly made "false and defamatory communications" regarding it and its attorneys to third-parties such as Kathleen and members of her family, 2) defendant did so with the intent to damage or harm it and its attorneys and 3) as a result, it lost an opportunity to earn an extraordinary contingent fee.  Plaintiff does not allege that defendant's statements are actionable without proof of economic loss.

Defendant moves to dismiss because the complaint asserts that he made defamatory statements without the least identification of such statements or an explanation of by whom, when and where the statements were made or fair notice of the underlying factual basis of the claim, citing Grant v. Target Corp., 2015 WL 5163048, at *6 (D. Mass. Sept. 3, 2015)(holding that, although the complaint need not "set forth the alleged defamatory statements verbatim," it must at least explain the "who, what, when, and where" of the statements and give

defendants fair notice of the factual basis for the defamation claim).

Plaintiff replies that it did, in fact, provide fair notice of the defamation claim because the complaint alleges that 1) a family member thought that defendant "was not impressed" with the meeting at plaintiff's law office, 2) plaintiff's attorneys perceived that their previously warm relationship with the Tuscano family "chilled" immediately after the meeting, 3) the Tuscano family began questioning plaintiff's experience and qualifications for the first time and 4) the Tuscano family retained another attorney shortly after the meeting.  Plaintiff concludes that

> Defendant clearly made disparaging comments such that
> John Tuscano would tell Plaintiff that Defendant was not
> impressed.

(internal quotation marks omitted). Plaintiff declares that, even though it does not know "exactly what Defendant told the Tuscanos and where they were when he said it," the factual assertions in the complaint satisfy enough of the "who, what, when, and where" inquiry to give defendant fair notice of the claim. It cites Grant, 2015 WL 5163048, at *6, again for that proposition.

After accepting all factual allegations as true, as it must when considering a motion to dismiss, the Court agrees with plaintiff on the issue of fair notice and finds it reasonable to

infer that defendant intentionally made a statement concerning plaintiff to a third party that could damage its reputation in the community and cause it to lose a client.

Accordingly, the defamation claim survives dismissal and defendant's motion to dismiss Count 3 for failure to state a claim will be denied.

### 4.    Unfair business practices under Chapter 93A

Chapter 93A provides a cause of action for any person 1) engaged in trade or commerce who 2) suffers a loss of money or property 3) as a result of 4) the use or employment of an unfair method of competition or unfair or deceptive act or practice by another person engaged in trade or commerce. M.G.L. c. 93A, § 11.  A plaintiff with a Chapter 93A claim must

> demonstrate an unfair or deceptive practice that falls within at least the penumbra of some common-law, statutory, or other established concept of unfairness.

Am. Paper Recycling Corp. v. IHC Corp., 775 F. Supp. 2d 322, 332 (D. Mass. 2011)(internal quotation marks omitted).  A corporate plaintiff faces "a stricter standard than consumers in terms of what constitutes unfair or deceptive conduct." Id.  Whether a particular set of acts is unfair or deceptive is a question of fact but "the boundaries of what may qualify for consideration as a [Chapter] 93A violation is a question of law." Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 54 (1st Cir. 1998).

Plaintiff purports to raise a Chapter 93A claim in Count 4 by alleging that defendant is an attorney engaged in trade or commerce who knowingly or willfully performed unfair or deceptive acts by 1) interviewing plaintiff and its attorneys about Kathleen's claim, 2) slandering plaintiff to the Tuscano family so that that they would retain alternate counsel and 3) receiving financial compensation as a result of his referral. Plaintiff contends that defendant's actions caused it to lose an opportunity to earn a high-paying fee.

Defendant moves to dismiss because he was not "engaged in trade or commerce" with plaintiff within the meaning of Chapter 93A.  The Court agrees.  The Massachusetts Supreme Judicial Court ("the SJC") has found that

> the proper party to assert a c. 93A claim against an attorney is a client or someone acting on a client's behalf.

Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 462-63 (1997)(citing Schaeffer v. Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, P.C., 405 Mass. 506, 514 (1989)).  Here, plaintiff does not allege that defendant's conduct caused it to suffer injuries on behalf of Kathleen or the Tuscano family. See Schaeffer, 405 Mass. at 514.

Accordingly, the complaint does not state a plausible claim for relief under Chapter 93A and defendant's motion to dismiss Count 4 will be allowed.

-13-

### III. <u>Motion for a more definite statement</u>

Pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, defendant moves for a more definite statement of Counts 2 and 3 which both survive dismissal.  A motion for a more definite statement should be allowed only where a complaint is "so vague or ambiguous that a party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).  That rule "is designed to remedy unintelligible pleadings, not merely to correct for lack of detail." <u>Ivymedia Corp.</u> v. <u>iLIKEBUS, Inc.</u>, 2015 WL 4254387, at *6 (D. Mass. July 13, 2015).

Defendant's motion is inapt here because the Court has already concluded that plaintiff adequately pled its claims of intentional interference with advantageous business relations in Count 2 and defamation in Count 3.  Accordingly, defendant's motion for a more definite statement will be denied.

<u>ORDER</u>

For the foregoing reasons, defendant's motion (Docket No. 5) is

1)    with respect to dismissing Counts 1 and 4 for failure to state a claim, **ALLOWED,**

2)    with respect to dismissing Counts 2 and 3 for failure to state a claim, **DENIED,** and

-14-

3)      with respect to requiring a more definite statement of
        Counts 2 and 3, **DENIED.**


**So ordered.**


                                    /s/ Nathaniel M. Gorton
                                    Nathaniel M. Gorton
                                    United States District Judge

Dated February 18, 2016